UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| BP LUBRICANTS USA INC., | **AMENDED COMPLAINT** |
| PLAINTIFF, | |
| VS. | |
| GREASE LIGHTNING, | CIVIL ACTION NO.: 1:14-CV-00046-RJA |
| DEFENDANT. | |

---

Plaintiff, BP Lubricants USA Inc. d/b/a Castrol (hereinafter "Castrol"), by its attorneys, Goldberg Segalla LLP, for its complaint against the above-named defendant, alleges as follows:

### PARTIES

1. Castrol is a business corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New Jersey, and is qualified to transact business in the State of New York.

2. Castrol is a manufacturer and seller of, among other things, automotive motor oil, lubricants, greases, and fluids (hereinafter collectively referred to as "Castrol Products").

3. Upon information and belief, defendant Grease Lightning is a business corporation organized and existing under the laws of the State of Nevada, with offices for the purpose of transacting business located at, among other places, 617 East Main Street, Batavia, NY 14020.

4. Upon information and belief, at various times from August 27, 2013 and continuing through the date of filing of this Complaint, Grease Lightning improperly used Castrol's trademarks (more fully identified below).

5.  Upon information and belief, and at all times material to the allegations contained herein, Grease Lightning has been engaged in the business of managing and operating retail automotive maintenance facilities offering services, including oil changes, to the general public throughout, among other areas, Upstate New York.

## JURISDICTION AND VENUE

6.  Grease Lightning has transacted and done business in, among other places, the County of Erie, State of New York, which is located in the Western District of New York.

7.  A substantial part of the events or omissions giving rise to Castrol's claims in this action occurred in the County of Genesee, State of New York, which is located in the Western District of New York.

8.  The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

9.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332 and venue is proper in Western District of New York pursuant to 28 U.S.C. §1391.

## FACTUAL BACKGROUND

## CASTROL'S TRADEMARKS

10.  Castrol is the exclusive licensee in the USA of the following trademarks, among others, registered upon the Principal Register of the United States Patent and Trademark Office:

| Mark | Registration No. | Registration Date |
| --- | --- | --- |
| CASTROL | 1966084 | 04/09/96 |
| CASTROL | 1258661 | 11/22/83 |
| CASTROL | 0089589 | 12/24/12 |
| CASTROL | 1246786 | 08/02/83 |
| CASTROL | 1262959 | 01/03/84 |
| CASTROL | 1268664 | 02/28/84 |
| CASTROL | 1242157 | 06/14/83 |
| CASTROL | 1241795 | 06/14/83 |
| CASTROL | 1280767 | 06/05/84 |
| CASTROL EDGE | 3662073 | 07/28/09 |
| GTX | 1791230 | 09/07/93 |
| SYNTEC | 1849765 | 08/16/94 |

11.  All of the above registrations (hereinafter collectively referred to as "Trademarks" or "Marks") are valid and subsisting and remain in full force and effect as prima facie evidence of the validity thereof and of Castrol's exclusive right to use the trademarks in connection with the goods specified in the registrations.

12.  Castrol has been commercially using the Trademarks and others in connection with its business and on goods in interstate commerce for years. Castrol has given notice of its registered rights in the Marks by using the ® symbol in connection with its marks.

13.  Castrol has expended a substantial amount of money and effort in advertising and promoting the Marks in furtherance of its business. Castrol's substantial promotional, advertising, publicity and public relations activities, done individually and through its licensees,

3

further promote the recognition and reputation associated with the Marks. These activities include television, billboard, radio and newspaper advertisements.

## AGREEMENT BETWEEN THE PARTIES

14. Prior to March 18, 2013, Castrol and Grease Lightning, through authorized agents and/or employees, began negotiating the terms of an agreement that would enable Grease Lightning to continue to purchase a percentage of its requirements of automotive motor oil and related products from Castrol.

15. The contemplated agreement further provided that Castrol would make a substantial business loan to Grease Lightning in conjunction with the parties' execution of an agreement detailing Grease Lightning's obligation to purchase a percentage of its requirements of automotive motor oil and related products from Castrol.

## SUPPLY AGREEMENT

16. On or about March 18, 2013, Castrol and Grease Lightning entered into a written agreement (the "Supply Agreement") under which Grease Lightning agreed to purchase at least ninety percent (90%) of its requirements of automotive motor oil and related products from Castrol ("Castrol Products"), subject to minimum volume amounts as set forth in the Supply Agreement, for a five-year term commencing March 18, 2013. (Castrol is not attaching a copy of the Supply Agreement hereto because it contains proprietary information and, upon information and belief, Grease Lightning already possesses a copy).

17. The Supply Agreement specifies that Castrol may terminate the agreement in the event that Grease Lightning fails to pay Castrol amounts owing based on its purchase of Castrol Products or otherwise breaches its obligations thereunder.

18. The Supply Agreement provides that, if terminated, Grease Lightning must pay Castrol liquidated damages in the amount of one and 00/100 dollar ($1.00) multiplied by the aggregate number of gallons of Castrol Products required to be purchased by Grease Lightning (as set forth in *Exhibit B* of the Supply Agreement) less the number of gallons of Castrol Products Grease Lightning actually purchased, within thirty (30) days of the date of notice of such termination.

19. The Supply Agreement provides that Castrol is entitled to recover its costs, including reasonable attorneys' fees, if required to litigate its rights arising out of or relating to the Supply Agreement.

20. Under the terms of the Supply Agreement, Castrol also granted Grease Lightning a non-exclusive, non-transferable, limited sub-license to advertise and display Castrol's "Marks solely in connection with its marketing, promotion and/or sale of [Castrol Products], or services using [Castrol Products] . . ." at various locations.

21. Under the terms of the Supply Agreement, Castrol reserves its right to prohibit use of Castrol's Marks "in any way that [Castrol], in its sole discretion, deems to be substandard, or that, in [Castrol's] sole discretion, adversely impacts on [Castrol's] rights or goodwill in the Marks."

### PROMISSORY NOTE

22. In conjunction with the parties' execution of the Supply Agreement, Castrol made a trade loan to Grease Lightning in the amount of Four Hundred Twenty Thousand Four Hundred Eighty-Two and 00/100 Dollars ($420,482.00) pursuant to the terms of a Promissory Note (hereinafter the "Note") executed by Grease Lightning's CEO on March 18, 2013. The Note provides that Grease Lightning's obligation to pay down the Note's principal amount shall

amortize at various rates associated with each gallon of Castrol Products purchased pursuant to the terms of the Supply Agreement.

23. A default under the Note is defined as, among other things, Grease Lightning's failure to comply with or perform any obligation set forth in the Supply Agreement.

24. Default is also defined under the Note as Grease Lightning's general failure to pay its debts as they become due.

25. If a default occurs under the Note, Castrol is empowered to declare all obligations under the Note immediately due and payable.

26. Upon a default, all amounts due under the Note accrue interest at the rate of eighteen percent (18%) per annum.

27. Pursuant to the terms of the Note, Grease Lightning is responsible to pay Castrol for all costs and expenses, including reasonable attorneys' fees, Castrol incurs in connection with the enforcement of Castrol's rights thereunder.

## GREASE LIGHTNING'S BREACH OF THE SUPPLY AGREEMENT

28. In the weeks and months prior to August 27, 2013, Grease Lightning failed to purchase the required minimum quarterly volumes of Castrol Product pursuant to the terms of the Supply Agreement, which amounted to a breach that entitled Castrol to terminate the Supply Agreement.

29. By letter dated August 27, 2013, Castrol notified Grease Lightning that it was in breach of its obligations under the Supply Agreement. As a consequence of its default, Grease Lightning is liable to Castrol for damages in the amount of (a) Four Hundred Seventy-Eight Thousand Five Hundred One and 32/100 Dollars ($478,501.32) under the Supply Agreement (which comprises $372,156 in liquidated damages for volume that it committed to purchase, but

6

did not, and $106,345.32 for signage costs), (b) Four Hundred Seventeen Thousand Five Hundred Twenty-Nine and 65/100 Dollars ($417,529.65) in unpaid principal due and owing under the terms of the Note, and (c) Twenty-Seven Thousand Eight Hundred Ninety-Seven and 61/100 Dollars ($27,897.61) for Castrol Products delivered but not paid for, representing a total amount of **Nine Hundred Twenty-Three Thousand Nine Hundred Twenty-Eight and 58/100 Dollars ($923,928.58) as of August 27, 2013**.

30. Castrol's August 27, 2013 notification letter demanded that Grease Lightning cure any breach or delinquency within thirty (30) days or be declared in default of the Supply Agreement.

31. Grease Lightning did not cure the breaches and delinquencies set forth in Castrol's August 27, 2013 notification letter.

32. By letter dated October 29, 2013, Castrol again advised Grease Lightning of its defaults under the Supply Agreement and Note, and terminated the Supply Agreement.

33. The October 29, 2013 letter states that, as a consequence of the termination of the Supply Agreement, Grease Lightning owes Castrol the amount of (a) Four Hundred Seventy-Eight Thousand Five Hundred One and 32/100 Dollars ($478,501.32) (which comprises $372,156 in liquidated damages for volume that it committed to purchase, but did not, and $106,345.32 for signage costs), (b) Four Hundred Seventeen Thousand Five Hundred Twenty-Nine and 65/100 Dollars ($417,529.65) in unpaid principal due and owing under the terms of the Note, and (c) a balance of Twenty-Seven Thousand Eight Hundred Ninety-Seven and 61/100 Dollars ($27,897.61) for Castrol Products delivered but not paid for, representing a total amount of Nine Hundred Twenty-Three Thousand Nine Hundred Twenty-Eight and 58/100 Dollars ($923,928.58) as of August 27, 2013.

34. Grease Lightning's failure to pay the amounts due to Castrol constitute breaches of obligations owing under that Supply Agreement and Note.

**INFRINGING ACTIVITIES**

35. Castrol granted Grease Lightning a non-exclusive sublicense to advertise and display Castrol's trademarks and trade names in connection with Grease Lightning's sale of Castrol Products during the life of the Supply Agreement.

36. The Supply Agreement expressly provides that the non-exclusive sublicense would be revoked if the Supply Agreement is terminated, or breached.

37. Upon breaching the Supply Agreement, and after termination of said Agreement, Grease Lightning ceased purchasing Castrol Products in material quantities and, upon information and belief, began using products manufactured by Castrol's competitors.

38. Nevertheless, after the termination of the Supply Agreement and in spite of using products originating from sources other than Castrol, Grease Lightning failed and refused to stop its infringing activities and continued to intentionally advertise and do business using the Castrol name and marks.

39. Grease Lightning has also intentionally used the Castrol name and marks on its website (www.Grease-Lightning.net) to promote its business.

40. Grease Lightning has also intentionally used the Castrol name and marks in several of the domain names it uses in connection with its business, namely www.castrolpremiumlube.net and www.castroltv.com.

## COUNT I

### BREACH
### OF CONTRACT (SUPPLY AGREEMENT)

41.   Castrol repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 40 as if fully set forth herein.

42.   All conditions precedent to bringing this action have been satisfied or waived.

43.   Grease Lightning breached obligations owing under the Supply Agreement by failing to purchase the quantities of Castrol Products required by the Supply Agreement.

44.   Grease Lightning breached the Supply Agreement by failing to pay timely amounts due thereunder.

45.   As a result of Grease Lightning's breach of obligations owing under the Supply Agreement, Castrol is entitled to recover judgment against Grease Lightning in the amount of Four Hundred Seventy-Eight Thousand Five Hundred One and 32/100 Dollars ($478,501.32) (which comprises $372,156 in liquidated damages for volume that it committed to purchase, but did not, and $106,345.32 for signage costs) plus pre-judgment interest, along with all costs, disbursements, and attorneys' fees incurred by Castrol in this action.

## COUNT II

### BREACH OF CONTRACT (PROMISSORY NOTE)

46.   Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 45 as if fully set forth herein.

47.   Grease Lightning's failure to comply with, and to perform, obligations under the Supply Agreement constitutes a default under the terms of the Note.

48.  Grease Lightning breached its obligations under the Supply Agreement when it failed to purchase the required minimum volume of Castrol Product pursuant to the terms of the Supply Agreement.

49.  As a result of the aforementioned breach of the Supply Agreement, Grease Lightning is in default under the Note.

50.  Grease Lightning was notified in writing of its breach of the Supply Agreement by letter dated August 27, 2013.

51.  Grease Lightning was notified in writing that the Supply Agreement was terminated and that it owed the full balance of the Note by letter dated October 29, 2013.

52.  As a result of Grease Lightning's default under the Note, Castrol is entitled to recover judgment against Grease Lightning in the amount of Four Hundred Seventeen Thousand Five Hundred Twenty-Nine and 65/100 Dollars ($417,529.65) in unpaid principal due and owing, plus interest at eighteen percent (18%) per annum from August 27, 2013, along with all costs, disbursements, and attorneys' fees incurred by Castrol in this action.

## COUNT III

### BREACH OF CONTRACT / GOODS DELIVERED / ACCOUNT STATED

53.  Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 52 as if fully set forth herein.

54.  During the period from June 26, 2013 through (approximately) August 26, 2013, Castrol, at the special insistence and request of Grease Lightning, delivered goods to Grease Lightning. With each shipment of goods to Grease Lightning, Castrol mailed an invoice to Grease Lightning for the amount owed with respect to such delivery.

55. Such goods had a reasonable and agreed upon value of Twenty-Seven Thousand Eight Hundred Ninety-Seven and 61/100 Dollars ($27,897.61).

56. Grease Lightning accepted and retained the goods without objection.

57. As of August 27, 2013, the amount of $27,897.61 was due and owing by Grease Lightning to Castrol.

58. Although amounts due have been duly demanded, no part of said sum has been paid.

59. Grease Lightning's failure and refusal to pay Castrol for the reasonable and agreed upon value of Castrol's goods constitutes breach of contract under the Supply Agreement.

60. Grease Lightning has failed and refused to respond or object to the invoices that Castrol mailed to it, which constitutes an account stated in the sum of $27,897.61.

61. Castrol has been damaged by Grease Lightning's breach and, based on the account stated, demands judgment against Grease Lightning in the sum of $27,897.61, plus interest at the statutory rate from August 27, 2013, costs, disbursements and attorneys' fees incurred by Castrol in this action.

## COUNT IV

### TRADEMARK INFRINGEMENT

62. Castrol repeats and re-alleges each and every allegation set forth in paragraphs 1 through 61 as if fully set forth herein

63. Upon information and belief, after breaching the Supply Agreement, Grease Lightning advertised and did business using the Castrol name and marks even though Grease Lightning had stopped purchasing products originating from Castrol and began using products manufactured by Castrol's competitors.

64. The aforementioned activities have caused and are continuing to cause the consuming public to be confused into believing that Grease Lightning's services are sponsored by or associated with those of Castrol when they are not.

65. Grease Lightning's use of Castrol's name and marks in connection with the advertising, promotion and solicitation of products and services closely related to the products and services of Castrol is without Castrol's consent, and in a manner which has and is likely to cause confusion, to cause mistake, or to deceive as to source or origin among purchasers and/or users of those products and services.

66. Grease Lightning's actions were and are done with constructive and actual notice of Castrol's rights in its marks, as well as with the real knowledge of the likelihood of confusion that would result due to Grease Lightning's use of Castrol's name and marks in connection with the advertising, promotion and solicitation of goods and services closely related to the goods and services of Castrol. Grease Lightning's actions were and are therefore taken in willful, deliberate and/or intentional disregard of Castrol's rights.

67. Grease Lighnting's acts, as alleged in this complaint, are without license, permission, or consent of Castrol.

68. Grease Lightning's activities described herein infringe the trademarks of Castrol in violation of the Federal Trademark Act, 15 U.S.C. §1051 et seq.

69. Castrol has been and continues to be damaged by Grease Lightning's activities and conduct. Grease Lightning has profited and will continue to profit thereby, and unless its conduct is enjoined, Castrol and its goodwill and reputation will suffer irreparable injury.

70. Castrol should be awarded damages in an amount to be determined at trial for the injuries sustained by Castrol in consequence of Grease Lightning's acts complained of herein,

and such damages should be trebled because of the willful acts described herein in disregard of Castrol's known rights. Grease Lightning should also be ordered to account for and pay over to Castrol all gains, profits and advantages they have derived from the acts complained of herein.

## COUNT V

### UNFAIR COMPETITION

71. Castrol repeats and re-alleges each and every allegation set forth in paragraphs 1 through 70 as if fully set forth herein.

72. Grease Lightning's use of the Castrol marks in connection with the provision of their services constitutes the use of false or misleading designation of origin and/or causes consumers to be confused, mistaken or deceived into believing that all such products originate with Castrol, or that there is some affiliation, connection or association of Castrol with Grease Lightning or as to the sponsorship or approval by Castrol of Grease Lightning's services.

73. Castrol has been and continues to be damaged by Grease Lightning's activities and conduct. Grease Lightning has profited and will continue to profit thereby, and unless its conduct is enjoined, Castrol and its goodwill and reputation will suffer irreparable injury.

74. Castrol should be awarded damages in an amount to be determined at trial for the injuries sustained by Castrol in consequence of Grease Lightning's acts complained of herein, and such damages should be trebled because of the willful acts described herein in disregard of Castrol's known rights. Grease Lightning should also be ordered to account for and pay over to Castrol all gains, profits and advantages they have derived from the acts complained of herein.

## COUNT VI

### PALMING OFF (15 U.S.C. §1125(a))

75. Castrol repeats and re-alleges each and every allegation set forth in paragraphs 1 through 74 as if fully set forth herein.

76. Upon information and belief, Grease Lightning always intended and presently intend to unfairly compete with Castrol by using the Castrol name and marks, the intent and result of which is a palming off of Grease Lightning's services as emanating from or being endorsed by Castrol, thereby enhancing the commercial value and reputation of Grease Lightning's services.

77. Castrol has been, and continues to be, damaged by Grease Lightning's activities and conduct. Grease Lightning has profited and will continue to profit thereby, and unless their conduct is enjoined, plaintiff and its goodwill and reputation will suffer irreparable injury.

78. Castrol should be awarded damages in an amount to be determined at trial for the injuries it has sustained as a consequence of Grease Lightning's acts complained of herein, and such damages should be trebled because of the willful acts described herein in disregard of Castrol's known rights. Grease Lightning should also be ordered to account for and pay over to Castrol all gains, profits and advantages derived by Grease Lightning and/or its agents, servants, employees, successors, assigns, or alter egos from the acts complained of herein.

## COUNT VII

**COMMON LAW UNFAIR COMPETITION**

79. Castrol repeats and re-alleges each and every allegation set forth in paragraphs 1 through 78 as if fully set forth herein.

80. The aforesaid acts of Grease Lightning are likely to cause confusion in the trade and in the general public as to the source of the services provided by Grease Lightning or are likely to lead the public to believe that Grease Lightning is in some way connected with Castrol.

81. The aforesaid acts of Grease Lightning constitute an attempt by Grease Lightning to trade upon the reputation and goodwill of, and to compete unfairly with, Castrol and constitute acts of unfair competition in violation of New York common law.

82. Grease Lightning's acts have been committed with the intent to cause confusion and mistake, and to deceive.

83. Castrol has been and continues to be damaged by Grease Lightning's activities and conduct. Grease Lightning has profited and will continue to profit thereby, and unless their conduct is enjoined, Castrol and its goodwill and reputation will suffer irreparable injury.

84. Castrol should be awarded damages in an amount to be determined at trial for the injuries sustained by Castrol in consequence of the acts of Grease Lightning complained of herein, and such damages should be trebled because of the willful acts described herein in disregard of Castrol's known rights. Grease Lightning should also be ordered to account for and pay over to Castrol all gains, profits and advantages derived by Grease Lightning and/or its agents, servants, employees, successors, assigns, or alter egos from the acts complained of herein.

## COUNT VIII

## N.Y. GENERAL BUSINESS LAW §360-L

85. Castrol repeats and re-alleges each and every allegation set forth in paragraphs 1 through 84 as if fully set forth herein.

86. Grease Lightning's activities have created and continue to create a likelihood of injury to Castrol's public image and reputation for the production and sale of high quality goods, and to dilute the distinctive quality of Castrol's famous marks and all rights held thereunder.

87. By reason of the foregoing, Grease Lightning has violated and is continuing to violate New York General Business Law §360-L.

88. Castrol has been and continues to be damaged by Grease Lightning's activities and conduct. Grease Lightning has profited and will continue to profit thereby, and unless its conduct is enjoined, Castrol and its goodwill and reputation will suffer irreparable injury.

89. Castrol should be awarded damages in an amount to be determined at trial for the injuries sustained by Castrol in consequence of the acts of Grease Lightning complained of herein, and such damages should be trebled because of the willful acts described herein in disregard of Castrol's known rights. Grease Lightning should also be ordered to account for and pay over to Castrol all gains, profits and advantages derived by Grease Lightning and/or its agents, servants, employees, successors, assigns, or alter egos from the acts complained of herein.

## COUNT IX

### N.Y. GENERAL BUSINESS LAW §368-d

90. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 89 as if fully set forth herein.

91. By reason of the foregoing, Grease Lightning has violated and is continuing to violate New York General Business Law §368-d.

92. Castrol has been and continues to be damaged by Grease Lightning's activities and conduct. Grease Lightning has profited and will continue to profit thereby, and unless its conduct is enjoined, Castrol and its goodwill and reputation will suffer irreparable injury.

93. Castrol should be awarded damages in an amount to be determined at trial for the injuries sustained by Castrol in consequence of the acts of Grease Lightning complained of herein, and such damages should be trebled because of the willful acts described herein in disregard of Castrol's known rights. Grease Lightning should also be ordered to account for and pay over to Castrol all gains, profits and advantages derived by Grease Lightning and/or its agents, servants, employees, successors, assigns, or alter egos from the acts complained of herein.

## COUNT X

### UNJUST ENRICHMENT

94. Castrol repeats and re-alleges each and every allegation set forth in paragraphs 1 through 93 as if fully set forth herein.

95. Grease Lightning, by virtue of its wrongful activities, has been unjustly enriched at the expense of Castrol.

WHEREFORE, Castrol demands an order and judgment that:

1. Directs that Grease Lightning, along with its respective agents, servants, employees, successors, assigns, alter egos and all persons, firms, corporations or entities acting under their direction, authority or control, and all persons acting in concert with them, be enjoined preliminarily and permanently from:

    a. using Castrol's Trademarks, or any colorable imitations thereof, or any other mark of Castrol, in violation of Castrol's rights therein in connection with their advertising, promotion, offering or sale of services;

    b. holding themselves out as owners of, or otherwise authorized to use the name, Trademarks and other marks of Castrol;

    c. performing any actions or using any words, names, domain names, styles, titles or marks which are likely to cause confusion, to cause mistake or to deceive, or to otherwise mislead the trade or public into believing that Castrol and Grease Lightning are one and the same or are in some way connected or that Castrol is a sponsor of Grease Lightning or that Grease Lightning is in some manner affiliated or associated with or under the supervision or control of Castrol or that Grease Lightning's services originate with Castrol or are advertised, promoted, offered or sold with the approval, consent or authorization of Castrol or are likely in any way to lead the trade or the public to associate Grease Lightning with Castrol;

    d. using any words, names, styles, domain names, titles or marks which create a likelihood of injury or actual injury to the business reputation of Castrol or a likelihood of dilution or actual dilution of Castrol's name, Trademarks and other marks and the goodwill associated therewith; and

    e. using any trade practices whatsoever, including those complained of herein, which tend to unfairly compete with or injure Castrol's business and the goodwill appertaining thereto.

2. Awards Castrol damages in an amount to be determined at trial for the injuries it has sustained as a result of the acts complained of herein, and that such damages be trebled because of the willful acts described herein in disregard of Castrol's known rights.

3. Directs Grease Lightning to account for and pay over to Castrol all gains, profits and advantages derived from the acts complained of herein.

4. Requires Grease Lightning to deliver up for destruction all goods, labels, stationery, signs, advertisements, brochures, promotional materials, and other written, audio or video materials bearing the Castrol name or mark or any other name or mark confusingly similar to Castrol's Trademarks or Castrol's other marks, together will all molds and any other means and materials for making or reproducing same.

5. Directs Grease Lightning to pay Castrol damages on Count I in the amount of Four Hundred Seventy-Eight Thousand Five Hundred One and 32/100 Dollars ($478,501.32) (which comprises $372,156 in liquidated damages for volume that it committed to purchase, but did not, and $106,345.32 for signage costs), together with interest at the statutory rate from August 27, 2013, costs, disbursements and attorneys' fees incurred by Castrol in this action.

6. Directs Grease Lightning to pay Castrol damages on Count II in the amount of Four Hundred Seventeen Thousand Five Hundred Twenty-Nine and 65/100 Dollars ($417,529.65) in unpaid principal due and owing under the Note, together with interest at the rate of eighteen percent (18%) per annum from August 27, 2013 and the costs and disbursements of this action and attorneys' fees incurred by Castrol in this action.

7. Directs Grease Lightning to pay Castrol damages on Count III in the amount of Twenty-Seven Thousand Eight Hundred Ninety-Seven and 61/100 Dollars ($27,897.61) for Castrol Products delivered but not paid for, together with interest at the statutory rate from August 27, 2013 and the costs and disbursements of this action and attorneys' fees incurred by Castrol in this action.

8. Directs Grease Lightning to pay to Castrol all other costs and expenses incurred by Castrol herein, including reasonable attorneys' fees, to the extent not otherwise requested above.

9. Awards such other, further and different relief as this court may deem just and proper.

DATED:   February 26, 2014
         Buffalo, New York

                                  GOLDBERG SEGALLA LLP

                                  */s/ Richard A. Braden*
                                  Richard A. Braden
                                  665 Main Street, Suite 400
                                  Buffalo, New York 14203
                                  (716) 566-5400
                                  Fax:  (716) 566-5401
                                  Email:  rbraden@goldbergsegalla.com

2711873.1